No. 94,811

DAVID A. MONCLA, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(176 P.3d 954)

Opinion filed February 8, 2008.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

McANANY, J.: David A. Moncla, who was convicted of the 1995 murder of Diane Swinney, appeals from the district court's summary denial of his K.S.A. 60-1507 motion in which he alleged prosecutorial misconduct, ineffective assistance of counsel, and newly discovered evidence. A divided panel of the Court of Appeals affirmed. *Moncla v. State*, No. 94,811, unpublished opinion filed December 1, 2006. This court granted Moncla's petition for review.

Swinney owned the Star's Club, a Wichita bar where Kevin Robertson worked. According to the State's witnesses, Swinney and employee Linda Brown closed the bar at about 2 a.m. on the day of the murder. Swinney left the bar with several cans of beer and drove to her apartment which was a block or two from the bar. Swinney had lived in her upstairs apartment for about 3 months before her death. Pat Berry and Kathryn Cunningham also occupied the house. Berry and Cunningham slept downstairs. Moncla had been living in the house less than a week before Swinney's death. He often slept in a recliner upstairs in Swinney's room, though at times he slept downstairs.

Berry testified that Moncla left the house on foot early on the morning of Swinney's murder. Moncla told Berry he was late for

work and Swinney was upstairs having sex with someone and he did not want to watch. Moncla went to the home of Carl Guy at about 9 a.m. and asked Guy for a ride to work. Guy agreed and stopped for gas en route. Moncla operated the pump and, during the process, spilled gasoline on his jeans. Guy dropped Moncla off at a QuikTrip store. Moncla arrived at the home of John Bayliff sometime between 9 and 9:30 that morning. Moncla told Bayliff that people were after him and he needed a place to stay. Moncla spent the day with Bayliff.

Later that day Robertson broke into Swinney's apartment after she failed to respond to repeated pounding on her door. She was found dead from repeated blows to her head. When Moncla saw the report of Swinney's death on the evening television news, he told Bayliff his version of what happened, a version consistent with Moncla's later testimony at his trial. Moncla stayed with Bayliff for several days until he was arrested and charged with Swinney's murder.

The police found a pillow and a woman's coat near Swinney's body. Both were ripped and bloody. A pillowcase covered Swinney's head. Moncla's fingerprints were found on the pillowcase. Moncla's fingerprints were found on the beer cans Swinney had brought to her house after closing the bar. His fingerprints were also found on several empty beer cans in Swinney's wastebasket. In the bathroom, the police found a claw hammer with human blood under its head. The coroner testified that Swinney suffered at least 18 blows to her head, causing her death. He also found defensive injuries on other areas of her body. He opined that the claw hammer found by the police was the murder weapon.

There was no evidence of fingerprints on the hammer. The police found a bloody rag in the bathroom where the hammer was located and where Moncla had been. It was the State's theory that there was enough time following the murder and before Moncla left for him to wipe down the hammer and remove any fingerprints with the rag.

Police investigators discovered bloodstains on Moncla's jeans. However, the stains could not be analyzed because of the gasoline spilled on them on the morning of Swinney's murder. Forensics

scientist Kelly Robbins testified that the pattern of the blood spatter on Moncla's jeans was consistent with impact force and not consistent with the wearer having knelt in the blood from Swinney's wounds after her attack, the explanation Moncla would later advance in his defense at trial.

Moncla testified on his own behalf. He claimed that Danny Long committed the murder with the help of Robertson because of debts Swinney owed. According to Moncla, on the morning of the murder he was sleeping on Swinney's recliner when he was awoken by a man hitting him over the head with a gun. There were three men in the room wearing the colors of a motorcycle gang. Moncla was forced from the bedroom into the bathroom. He heard several slaps or hits and heard someone say, "[W]e're going to have to take a loss on this one." He heard the name Kevin. (When Kevin Robertson testified at trial, Moncla claimed he realized that it was Robertson who had hit him on the head with a gun.) After the men left, Moncla reentered the bedroom and saw Swinney crying on the floor with a pillow over her head. He removed the pillow and knelt at her side, causing the bloodstains on his jeans. Swinney asked Moncla to "stay out of it," so he left.

Robert Wisley, a friend of Long, testified on Moncla's behalf that Long approached him in a bar and confessed to murdering Swinney with a hammer.

Moncla was convicted of first-degree murder for Swinney's death. The court sentenced him to life imprisonment with no possibility of parole for 40 years. This court affirmed Moncla's conviction. *State v. Moncla*, 262 Kan. 58, 79, 936 P.2d 727 (1997) (*Moncla I*).

In 1998, Moncla moved for a new trial based on newly discovered evidence. For support he provided affidavits of two fellow inmates, Allen Richards and Scott Staggs. Richards and Staggs claimed that Robertson admitted to them that he was involved in the murder. After a nonevidentiary hearing, the district court denied relief without articulating the basis for its denial. Moncla appealed. On appeal, this court reversed and remanded in order for the district court to evaluate the alleged new evidence and to state

its findings on the record. *State v. Moncla*, 269 Kan. 61, 4 P.3d 618 (2000) (*Moncla II*).

On remand, the district court held an evidentiary hearing on Moncla's motion, following which it concluded the new evidence did not raise a reasonable possibility of a different verdict if the case would have been retried. Moncla again appealed, and this court affirmed. *State v. Moncla*, 273 Kan. 856, 861, 46 P.3d 1162 (2002) (*Moncla III*).

In 2003, Moncla moved for relief pursuant to K.S.A. 60-1507. In his motion he claimed prosecutorial misconduct during the trial, ineffective assistance of trial and appellate counsel, and more newly discovered evidence. Following a nonevidentiary hearing, the district court denied relief. A divided panel of the Court of Appeals affirmed. *Moncla v. State*, No. 94,811, unpublished opinion filed December 1, 2006 (*Moncla IV*). Judge Greene dissented with regard to the denial of an evidentiary hearing on Moncla's claim of newly discovered evidence. *Moncla IV*, slip op. D-1 to D-3 (Greene, J., dissenting). The case returns to us on Moncla's petition for review.

*Legal Standards for the District Court and for Appellate Review*

An evidentiary hearing on Moncla's K.S.A. 60-1507 motion is not required if the motion together with the files and records of the case conclusively show that Moncla is not entitled to relief. See K.S.A. 60-1507(b). The burden is on Moncla to allege facts sufficient to warrant a hearing on the motion. See Supreme Court Rule 183(g) (2007 Kan. Ct. R. Annot. 244); *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994). If no substantial issues of fact are presented by the motion, the district court is not required to conduct an evidentiary hearing. *Rhone v. State*, 211 Kan. 206, 208, 505 P.2d 673 (1973).

The district court held a preliminary hearing on Moncla's motion, at which Moncla's counsel appeared and argued on Moncla's behalf. In its order overruling Moncla's motion, the district court made detailed findings of fact and conclusions of law. We examine these findings and conclusions in order to determine if the findings are supported by substantial competent evidence and whether

those findings are sufficient to support the court's conclusions of law. We review de nova the district court's conclusions of law. *Bellamy v. State*, 285 Kan. 346, Syl ¶ 4, 172 P.3d 10 (2007).

*Prosecutorial Misconduct and the Failure of Counsel to Preserve and Raise the Issue on Direct Appeal*

In his 2003 motion, Moncla asserts for the first time since his 1995 trial that the prosecutor engaged in misconduct by calling him a liar on multiple occasions during closing argument. Without recounting all of the prosecutor's argument, it suffices to say that he repeatedly characterized Moncla as a liar for telling different versions of the events to different persons at different times. The district court found that this claim was for a trial error which Moncla could not raise in his K.S.A. 60-1507 motion since Moncla failed to demonstrate exceptional circumstances which would excuse his failure to raise the issue in his direct appeal. See Supreme Court Rule 183(c)(3) (2007 Kan. Ct. R. Annot. 244). The district court also found that this claim was barred by laches.

Moncla may raise the issue of prosecutorial misconduct only after showing exceptional circumstances which excuse his failure to raise the issue in his direct appeal. See Supreme Court Rule 183(c)(3); *State v. Swisher*, 281 Kan. 447, 449, 132 P.3d 1274 (2006). Moncla claims these exceptional circumstances consist of: (1) the failure of his trial counsel to object to the prosecutor's remarks at trial and (2) the failure of his appellate counsel to raise the issue in his direct appeal.

To demonstrate exceptional circumstances, Moncla must establish the two essential elements of ineffective assistance of counsel enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 (1984); see *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland* test). Those elements, as recognized by this court, are: (1) counsel's representation fell below an objective standard of reasonableness, considering all the circumstances and (2) but for counsel's deficient performance there is a reasonable probability that the outcome of the proceeding would have been more favorable to the defendant. See *Bledsoe v. State*, 283 Kan. 81, 90,

150 P.3d 868 (2007). In considering the first element, Moncla's trial and appellate counsel enjoy a strong presumption that their conduct falls within the wide range of reasonable professional conduct. Thus, we are highly deferential in scrutinizing their conduct and make every effort to eliminate the distorting effects of hindsight. The second element requires a showing of prejudice.

With respect to the claims regarding trial counsel, we are immediately drawn to the second element of the *Strickland* test, the need to show prejudice. Trial counsel's failure to object to the prosecutor's remarks did not prejudice Moncla by denying him the right to raise and argue the issue on appeal. This is because the standard of appellate review is the same regardless of whether counsel objected to the remarks at trial. See *Haddock v. State*, 282 Kan. 475, 523, 146 P.3d 187 (2006). This brings us to the issue of the conduct of Moncla's appellate counsel.

Moncla's appellate counsel testified at the hearing that she chose appellate issues most likely to result in a reversal, not issues likely to result in harmless error in light of the overall evidence. We give wide deference to counsel in deciding what issues should be asserted on appeal. Sound professional advocacy requires the exercise of discretion in identifying issues to be presented to the tribunal. Sound appellate advocacy does not require counsel to dilute the effect of otherwise worthwhile claims with others reasonably determined to be unlikely to provide any relief.

*Haddock* is a recent example of those cases in which the prosecutor's improper comments in closing argument that the defendant was a liar did not warrant reversal since there was no reasonable likelihood that the outcome of the trial would have been different absent these statements. 282 Kan. at 522-23.

Moncla's explanation of who attacked Swinney changed several times throughout the course of the trial. Nevertheless, it is clear that the prosecutor's remarks regarding Moncla were improper. However, the prosecutor's remarks occupied a minuscule portion of the trial proceedings. They were made after the district court's caveat to the jury that the statements and arguments of counsel are not evidence and should not be treated as such. The jurors had been instructed that they were the ones charged with deciding the

credibility of the witnesses. Moncla's motion does not allege ill will on the part of the prosecutor. Further, the evidence against Moncla was overwhelming. Moncla's fingerprints were found at the crime scene. Moncla's jeans and shoes were covered with a blood-spatter pattern inconsistent with his explanation of having knelt at Swinney's side after she had been attacked. Moncla was the only person known to be in the victim's room near the time of the murder. And no one other than Moncla claimed to have seen the people in the house whom Moncla identified as Swinney's attackers.

We conclude that there is no reasonable probability that the outcome of the trial would have been more favorable to Moncla had the prosecutor not made these improvident remarks during closing argument. Accordingly, Moncla fails to demonstrate that the failure of his counsel to preserve and argue this issue on appeal constitutes exceptional circumstances which excuse his failure to assert this claim before the filing of his K.S.A. 60-1507 motion 8 years after his trial.

Since Moncla fails to show exceptional circumstances which excuse his failure to assert this claim on his direct appeal, it is unnecessary to consider the issue of laches. The district court did not err in denying relief on this claim under Supreme Court Rule 183(c)(3).

### Other Ineffective Assistance of Counsel Claims

Moncla argues that his trial counsel also was deficient for (1) failing to object to the prosecutor's statements regarding polygraph testing; (2) failing to request that a transcript be made of two sidebar conferences; and (3) failing to request DNA testing of numerous hairs and other items found at the crime scene.

### 1. Polygraph Evidence

Moncla claimed that Danny Long was the murderer, not he. Detective Timothy Relph investigated Long. Moncla called Relph as a witness to advance this claim. Before calling Relph to testify, Moncla moved in limine to bar inquiry into the polygraph test the police gave Long. The trial judge ruled, "I will not prevent the State from going into the fact this person was given a polygraph. I

will prohibit the State from mentioning anything else whatsoever about the results of that polygraph examination." The judge further explained that the prosecutor could "ask the detective if after all of the investigations that were utilized what if any determination was made."

The following exchange took place during the State's cross-examination of Relph:

"Q. [Prosecutor:] . . . Did you investigate Danny Long?
"A. [Detective Relph:] Yes, I did.
"Q. All right. And in part of that investigation, did you ask him to take a polygraph?
"A. Yes, I did, ma'am.
"Q. And did he take a polygraph?
"A. Yes, he did.
"Q. After your investigation of him, were you able to rule him out as a suspect?
"A. Yes, I was, ma'am.
"Q. And in addition to the polygraph, didn't you also submit his fingerprints that were taken from that scene to determine whether his fingerprints were found anywhere at that scene?
"A. I did submit a request, yes, ma'am.
"Q. And did you get a result?
"A. Yes, ma'am.
"Q. And what was that?
"A. His fingerprints were not located at that scene."

Moncla's defense counsel did not object to this exchange; thus, the issue was not preserved for Moncla's direct appeal. Moncla now asserts that this omission denied him effective legal representation at trial. He claims that the *results* of the polygraph examination should not have been admitted.

Relph testified to the following facts: (1) Long was investigated; (2) Long was given a polygraph exam; (3) at the end of the investigation, Long was ruled out as a suspect; and (4) the investigation included a check of fingerprints, and no prints from Long were found at the scene. Moncla failed to note fact (4) of the testimony in his appellate brief. When fact (4) is considered, Moncla's argument seems to be that the State violated the order in limine when it improperly elicited fact (3) before fact (4). In other words, the State asked whether Long was ruled out as a suspect before Relph testified that Long's fingerprints were not found at the scene. This

argument suggests that no violation would have occurred if the State had elicited fact (4) before fact (3).

On Moncla's direct appeal, the court did not reach this issue since "the defendant did not object to the questions of the prosecution which *arguably* violated the trial court order in limine." (Emphasis added.) *Moncla I*, 262 Kan. at 66. Contrary to the dicta on this point in Moncla's direct appeal, Moncla's argument is based upon an unreasonably close reading of the order in limine. The trial court permitted the State to establish that Long was given a polygraph examination and the ultimate outcome of the investigation. Relph testified that Long was ruled out as a suspect. This occurred after the polygraph examination was administered and after no fingerprints from Long were found at the murder scene. Moncla's counsel was not deficient for failing to object to this testimony which was consistent with the court's order in limine.

### 2. Sidebar Conferences

Moncla argues his trial counsel was constitutionally deficient in failing to request that a record be made of two sidebar conferences that took place at trial. This issue arises from a discussion in Moncla's direct appeal of his claims regarding the admission of certain testimony under the provisions of K.S.A. 60-455. This court began with the general observation:

"The defendant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper. *State v. Richardson* , 256 Kan. 69, 84, 883 P.2d 1107 (1994)." *Moncla I*, 262 Kan. at 67.

From this, the court observed: "The defendant had the responsibility to invite the court reporter to record the substance of the sidebar conference." *Moncla I*, 262 Kan. at 68.

We need not revisit the extent of counsel's responsibility to see that a record is made of the proceedings vis-a-vis the authority and duties of the trial court to assure a proper and orderly conduct of the trial. We need only examine the record of the trial to consider the merits of this claim.

Moncla does not cite to the specific testimony during which the trial court engaged in a bench conference with counsel. Examining

Moncla's brief in his direct appeal, where this issue originated, Moncla first raised the issue of improper K.S.A. 60-455 evidence during the testimony of Sherry Bornhauser, his former girlfriend. Moncla's counsel made several objections upon which the court ruled. At no time did either counsel request leave to approach for a bench conference. There was no failure to maintain a record of a bench conference because there was no bench conference requested or granted.

The next area of concern came during Moncla's cross-examination. When the State attempted to elicit testimony that Moncla had battered Swinney before, Moncla's counsel objected and requested a bench conference. Following the bench conference the trial court sustained Moncla's objection. In the course of further interrogation, other objections were raised and ruled upon, but no further bench conference was requested. Obviously, Moncla can have no complaint about counsel's conduct when the court sustained his counsel's objection and the objectionable question was never answered.

The final area of inquiry involved the issue of the admission of an audiotape recording of a police interview of Bayliff, the friend Moncla stayed with for several days before being arrested. The State offered the tape. Moncla's counsel objected and requested leave to approach. Following a bench conference, Moncla's counsel objected to statements on the tape "about Mr. Bayliff's wife and other individuals." Moncla's counsel requested that those portions be redacted. The State agreed, and a redacted form of the tape was admitted into evidence and played to the jury. At some point during the playing of the tape Moncla's counsel objected, to which the court responded, "Was there a problem with the editing that you were going to do?" Moncla's counsel replied, "No, that part wasn't pointed out to me." No specific objection was enunciated. In fact, it is not even clear whether Moncla's counsel had an objection or whether she simply misspoke and withdrew any objection. In any event, she did not press the issue and the playing of the tape continued without objection.

Though not raised in his brief on his direct appeal, Moncla apparently argued that the audiotape included references to various

domestic violence issues. Our examination of the record discloses no transcript of Bayliff's police interview to confirm this. Moncla fails to identify any specific portion of the Bayliff interview which was inadmissible and which his counsel should have fought to keep out. In any event, Moncla's defense counsel had and took the opportunity to undermine any facts described in the audiotape during her cross-examination of the various witnesses.

An examination of Moncla's motion and the files and records of his case fails to demonstrate any defect in counsel's conduct regarding admission of the Bayliff tape. But of equal importance, Moncla fails to demonstrate prejudice, *i.e.*, "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different" in light of "the totality of the evidence." See *Bledsoe*, 283 Kan. at 90-91. Accordingly, the district court did not err in summarily denying relief on this claim.

### 3. *Testing of Evidence Found at the Crime Scene*

Moncla claims his trial counsel was ineffective for failing to obtain a DNA analysis of hairs, fibers, semen samples, and a bloody footprint found at the scene to determine if they came from other suspects. First, we note that there is no reference in the record to any semen samples or bloody footprints other than in Moncla's K.S.A. 60-1507 motion. Second, Moncla's trial counsel was not obligated to establish the identity of the murderer to effectively represent Moncla. Some of the hair found at the scene belonged to Swinney. So long as a question remained as to the source of the remaining hair and other substances found at the scene, Moncla's trial counsel was free to argue Moncla's theory that someone else committed the murder. That defense would have been compromised had DNA testing identified Moncla as the source of these items found at the scene. Thus, the decision not to move the court for testing may be reasonably characterized as "a tactical decision and not a deficient one." *State v. Haddock*, 282 Kan. 475, 518, 146 P.3d 187 (2006); see *State v. Rice*, 261 Kan. 567, 568, 932 P.2d 981 (1997). We defer to decisions of trial counsel on matters of

reasonable trial strategy. Moncla fails to demonstrate that his trial counsel was deficient in this regard.

### Newly Discovered Evidence

Finally, Moncla claims the district court erred in failing to order a hearing on his claim of newly discovered evidence. His newly discovered evidence is the anticipated testimony of Clayton Swanner; Sergeant O'Kelly, Jr., a correctional officer at the El Dorado Correctional Facility (El Dorado); Carla Weir; and Brandy Hanna.

### 1. Clayton Swanner

Swanner is an inmate incarcerated with Moncla at El Dorado. Swanner wrote a letter to Moncla's counsel in which he stated he had been incarcerated with Kevin Robertson at the Winfield Correctional Facility. While there, Robertson confessed to Swanner that Robertson and his brother killed Swinney by beating her over the head with a hammer which they disposed of later. When contacted by Moncla's counsel, Swanner stated he would not testify either for Moncla or against the Robertson brothers. He stated, "I won't sign any affidavit concerning my conversation I had with Mr. Moncla or the Robertson brothers."

### 2. Sergeant O'Kelly, Jr.

Moncla claims Sergeant O'Kelly informed him that Swanner had told O'Kelly about Robertson's confession. O'Kelly stated he would be willing to testify to Swanner's statements to him. O'Kelly did not respond when Moncla's counsel attempted to reach him.

### 3. Carla Weir

Carla Weir reported that Cleo Herrick came to Weir's home the morning of Swinney's murder with one of the Robertson brothers; that Herrick told Weir that one of the brothers was involved in Swinney's murder; and that Weir did not report this to the police out of fear she would be killed if she did so. Weir did not respond when Moncla's counsel attempted to reach her.

### 4. Brandy Hanna

Brandy Hanna, who was present at Weir's house when Herrick arrived, stated that Herrick and her companion were constantly looking out the window for the police. According to Hanna, Herrick took Weir into another room to talk and when the two returned Weir was crying. Later, Weir informed Hanna that Swinney was dead and that Herrick had threatened to kill Weir if she went to the police. When Moncla's counsel contacted Hanna, she stated she had no personal knowledge about who killed Swinney and could only repeat rumors she had heard. Further, she was not sure if the other person present at the home was one of the Robertson brothers.

### 5. Prior Rulings

The district court denied relief without an evidentiary hearing, finding that Moncla had previously moved for a new trial on a claim of newly discovered evidence and had been afforded a hearing on the claim. The court characterized Moncla's motion as a "reformulation of his previously adjudicated claim." Further, the involvement of Robertson and Herrick had been explored at trial and rejected by the jury.

On appeal from this ruling, the Court of Appeals affirmed, finding no abuse of discretion since even if these witnesses testified as Moncla claimed, given the extensive physical evidence against Moncla, there was no reasonable probability that a retrial would produce a different outcome. Judge Greene dissented, stating that Moncla's claims were not a reformulation of previous claims and they raised substantial factual issues which merited an evidentiary hearing at which the reluctant witnesses could be subpoenaed to testify.

### 6. Standard of Review

Moncla's claim of newly discovered evidence, raised in the context of a K.S.A. 60-1507 proceeding, was treated by the district court as Moncla's second motion for a new trial. Our review of a district court's order denying a request for new trial based on newly discovered evidence is limited to whether the court abused its dis-

cretion. *Baker v. State*, 243 Kan. 1, 11, 755 P.2d 493 (1988). However, in considering whether the district court should have conducted an evidentiary hearing before denying a new trial, we consider: (1) whether the motion alleges facts which do not appear in the original record which, if true, would entitle Moncla to relief; (2) whether the motion adequately identifies readily available witnesses whose testimony would support these new facts and demonstrate that Moncla should receive a new trial; and (3) whether Moncla's newly discovered evidence could have been produced at his trial through the exercise of reasonable diligence. See *State v. Holmes*, 278 Kan. 603, 629, 102 P.3d 406 (2004); *State v. Norton*, 277 Kan. 432, 437, 85 P.3d 686 (2004); *Taylor v. State*, 251 Kan. 272, 276-77, 834 P.2d 1325 (1992), *disapproved on other grounds State v. Rice*, 261 Kan. 567, 602, 932 P.2d 981 (1997). The abuse-of-discretion standard includes a review to determine whether the court's exercise of its discretion was guided by erroneous legal conclusions. *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005) (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 [1996]).

## 7. Analysis

Moncla's motion is not simply a rehashing of his 1998 motion for a new trial. While the issue of who committed the murder is the same, the witnesses through whom Moncla claims his innocence may be proven have not been evaluated by the district court. Moncla's current K.S.A. 60-1507 motion alleges facts which were never heard by his jury. Moncla identifies specific witnesses who, he claims, will testify to these facts. We have no idea whether these witnesses will testify in the manner described in Moncla's motion. The claimed testimony of Swanner and O'Kelly can be characterized as newly discovered since it relates to events and statements made long after Moncla's trial. However, if Hanna and Weir testify in the manner claimed by Moncla in his motion, we have no idea whether the evidence they present truly can be characterized as "newly discovered." Our lack of information on these points is shared by the district judge who rejected these claims without a hearing. Further, the reluctance of these witnesses does not fore-

close Moncla's right to an evidentiary hearing. As Judge Greene noted in his dissent, the court can compel the attendance and testimony of Moncla's reluctant witnesses to determine the issues raised and whether Moncla is entitled to a new trial. *Moncla IV*, slip op. at D-2 (Greene, J., dissenting).

We conclude that the district court abused its discretion in denying a hearing on Moncla's newly discovered evidence claims. The merits of these claims must await an evidentiary hearing on Moncla's motion to determine whether Swanner, O'Kelly, Weir, and Hanna testify to the facts alleged by Moncla; whether the substance of any evidence they present is sufficient to raise a reasonable probability of Moncla's acquittal upon a retrial; and, if so, whether Moncla could have introduced this evidence at his original trial through the exercise of reasonable diligence.

Reversed and remanded with directions for an evidentiary hearing on Moncla's newly discovered evidence claims.

DAVIS and JOHNSON, JJ., not participating.

MCANANY, J., and LARSON, S.J., assigned.