NOT DESIGNATED FOR PUBLICATION

No. 119,462

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MANUEL A. RIVAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed May 17, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Hope E. Faflick Reynolds* and *Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM: Manuel Rivas, convicted of second-degree murder, originally received a downward durational departure sentence. Because of a criminal history score error, this court set aside that sentence. After this court remanded, the district court did not impose a departure sentence the second time around. Rivas returns again to this court, contending the first sentence departure was the law of the case and the district court lacked any authority to impose a guideline sentence. We disagree. Just because Rivas received a departure sentence the first time for his crime, that does not mean he must

1

receive a departure sentence on remand. We reject Rivas' claim that his departure sentence is the law of the case. Thus, we affirm Rivas's sentence.

For his second point, Rivas complains that the court treated a handwritten notarized statement attached to his sentence departure motion as a motion for a new trial based on newly discovered evidence. The statement was from a man that claimed he and his wife had seen someone other than Rivas shoot the victim here. The court ruled without holding an evidentiary hearing. Rivas contends the district court should have scheduled an evidentiary hearing on this issue and he asks for remand. Under the circumstances that we will describe later, we agree with Rivas and remand the matter for an evidentiary hearing.

*Rivas appeals, his sentence is vacated, and he is resentenced.*

A jury convicted Rivas of intentional second-degree murder. Based on a criminal history score of B, the presumptive guideline sentencing range was between 554 and 618 months in prison. The court granted a downward durational departure and sentenced Rivas to 400 months after finding one compelling reason for the departure—that the criminal history used to enhance Rivas' criminal history score was "of a type of offense that is very different" than the primary crime. His criminal history score was based on one person felony and the aggregation of three person misdemeanors.

On appeal, this court found one of the person misdemeanor convictions could not be used to enhance his criminal history score because there was insufficient evidence that Rivas was represented by counsel in that case. This court affirmed Rivas' conviction, but vacated his sentence and remanded for the imposition of a new sentence. *State v. Rivas*, No. 114,947, 2017 WL 3207144 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 992 (2017).

2

On remand, Rivas again sought a durational departure, arguing the reduced term was warranted given his disciplinary record and accomplishments while incarcerated, family support, and employment record. In contrast, the State argued for the high number in the presumptive sentencing range because Rivas showed no remorse for the crime. With the adjustment to his criminal history score, the new presumptive sentencing range was between 240 and 267 months. The court denied the departure motion and imposed the upper presumptive term of 267 months in prison based on a criminal history score of D.

Rivas also presented the district court with a notarized note from Dominic Voelker contending that he and his wife saw a man named "Jay" shoot the victim, rather than Rivas. The court construed the arguments and Voelker's statement as a motion for a new trial based on newly discovered evidence. The court denied the motion, concluding that the evidence could have been produced at trial and it was not of such materiality as would likely change the outcome of the trial.

*Rivas argues that the prior departure sentence was the law of the case.*

Rivas argues for the first time on appeal that his original departure was the "law of the case" because the State did not appeal it and the factor the court relied on in granting the departure still remained true at resentencing. We are not so persuaded.

In this context we have a trial court responding to a remand from an appellate court. This is called "mandate rule." Under K.S.A. 20-108 and K.S.A. 60-2106 the law compels the district court to proceed in accordance with the mandate and the law of the case as established on appeal. The doctrine applies to matters actually decided in the prior proceedings, as well as to matters for which the party failed to seek review in a prior proceeding. *State v. Parry*, 305 Kan. 1189, 1195, 390 P.3d 879 (2017). Whether the law

3

of the case doctrine bars an issue is a legal question over which this court has unlimited review. 305 Kan. 1189, Syl. ¶ 3.

Rivas does not explain why this court should consider his law of the case argument for the first time on appeal. Issues not raised before the trial court generally cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). If an issue was not raised before the trial court, Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why the issue should be considered for the first time on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). Rivas fails to cite any authority that supports his argument that the law of the case doctrine applies under these circumstances. This court's decision vacating his original sentence is the law of the case. This means that the district court had to comply with this court's mandate to "vacate his sentence" and impose a "new sentence."

In addition, Rivas' argument rests on the faulty assumption that "the factor relied on by the court in granting the original departure—the crime at issue was unlike the prior crimes—still remained true at resentencing." Instead, the district court granted the departure because Rivas' criminal history score was "enhance[d]" to B by a dissimilar criminal history. When Rivas' criminal history score changed to D that concern no longer existed. Besides, Rivas' new sentence of 267 months is much lower than his earlier departure to 400 months. We hold the departure sentence is not the law of the case and affirm his new sentence.

*We remand for an evidentiary hearing.*

At the resentencing hearing, Rivas' attorney offered Voelker's notarized statement contending that he and his wife observed a man named "Jay" shoot the victim, rather than Rivas. Both parties refer to the statement as an "affidavit" but the statement does not include language stating it was "sworn to" and it is undated. While the statement was

4

referred to in Rivas' motion for a departure sentence, we find nothing in the record showing that Rivas' attorney made a motion for a new trial. Instead, at the hearing the attorney stated:

> "[T]his [Voelker's statement] is really more in the nature of maybe what a postconviction lawyer would bring up as a basis for remedies based on new evidence. But I didn't feel like—whether it's appropriate or not for the Court to consider now, I didn't feel like I could just stick it in a file and ignore it in the hopes that some future postconviction lawyer would find it and do something with it."

Based on the statements of counsel and Rivas, the district court construed the statement as a motion for a new trial.

The district court refused to assume that "Jay" was Jeremy Anspach, Rivas' codefendant, and found that Voelker's testimony could have been produced at trial with reasonable diligence because the letter stated Rivas got into a car with Voelker just after the shooting. The court did not believe it needed to go further, but it found the evidence was not material because Voelker was not at the hearing to testify and be cross-examined. The court found that since the hearing had been scheduled for some time, Rivas could have produced Voelker to testify.

The rules we must follow on such an issue are clear. An appellate court reviews the trial court's decision on a motion for new trial based on newly discovered evidence for an abuse of discretion. *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015). A judicial action constitutes an abuse of discretion if:

- no reasonable person would take the view adopted by the trial court;
- it is based on an error of law; or
- it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

5

On appeal, Rivas contends the district court should have scheduled an evidentiary hearing on this issue and he asks for remand. Rivas argues that neither he nor his attorney knew the district court would construe the statement as a motion for a new trial so they did not know to produce Voelker to testify. Rivas argues that the statement does not establish that Voelker or his wife could have been produced at trial. Rivas contends the district court used the wrong test for materiality—the court should have considered whether the evidence, if credible and true, would have produced a different result at trial. He argues that Voelker's and his wife's testimony would have tipped the scale at trial because it would have been three people who saw Anspach shoot the victim, versus two people who saw Rivas shoot him.

The court made no credibility determination about Voelker's allegations. Rather, the court discounted Voelker's allegations because Voelker was not present to testify. This was error. The court did not consider whether an evidentiary hearing might be appropriate.

Rivas did not move for a new trial based on newly discovered evidence before the resentencing hearing. It is difficult to construe Rivas' motion for departure findings or the statement itself as a motion for a new trial. Because the motion was first made at a resentencing hearing, the question becomes whether Rivas made a sufficient showing to be given an evidentiary hearing on this issue. We think he has.

A defendant who moves for a new trial based on newly discovered evidence has no automatic right to an evidentiary hearing. *State v. Thomas*, 257 Kan. 228, Syl. ¶ 1, 891 P.2d 417 (1995). The court can instead conduct a preliminary inquiry and determine whether there was a substantial basis for the claim. *State v. Dunn*, 243 Kan. 414, 436, 758 P.2d 718 (1988). When reviewing whether the district court should have conducted an evidentiary hearing before denying a motion for a new trial based on newly discovered evidence, the court considers:

6

- whether the motion alleges facts which do not appear in the original record which, if true, would entitle the defendant to relief;
- whether the motion adequately identifies readily available witnesses whose testimony would support these new facts and show that the defendant should receive a new trial; and
- whether the defendant's newly discovered evidence could have been produced at trial through the exercise of reasonable diligence. *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008).

At Rivas' trial, there was conflicting eyewitness testimony. Highly summarized, the testimony was:

- Gerardo Reyes testified Rivas and Anspach entered Eric Salazar's apartment. Rivas had a gun in his hand. Rivas and Salazar argued. Eventually, Rivas and Salazar struggled over the gun. During the struggle, Anspach pulled something out which may have been a gun, but Reyes was unsure. Rivas shot Salazar. Rivas and Anspach ran out of the apartment and Rivas said, "I got him."
- Marino Mejia testified he was in the bathroom and heard loud talking. He opened the door and then saw Rivas shoot Salazar. He did not see Anspach. He may have initially told a police officer that he only heard the gunshot, but there was a language barrier.
- Miguel Sotello testified he saw Rivas had a gun in his hand and Salazar tried to take the gun away from Rivas. Sotello hid, heard a gunshot, and saw Salazar fall to the ground. Anspach dragged Rivas out of the apartment. Rivas was saying the word "no" repeatedly.
- Michell Rodriguez testified Rivas and another man entered the apartment. According to her, no one else was present in the room. Rivas and Salazar got into an argument. The unidentified man had a firearm pointed in the direction of the argument. The unidentified man fired his weapon and Salazar fell to the floor.

7

*(1) Whether the motion alleges facts that do not appear in the original record which, if true, would entitle the defendant to relief*

Voelker's statement does not appear in the original record. The district court did not assume that "Jay" was Anspach because the statement does not say so. But Rivas' own statement at the hearing seemed to suggest that Jay and Anspach were the same person because Rivas said that Anspach had committed a murder in Chicago and the statement says that "Jay" had committed a murder in Chicago. If Voelker and his wife had testified at trial that they saw Anspach shoot the victim, rather than Rivas, that would have corroborated Michell's testimony and made it more likely that the object that Reyes saw Anspach pull out was, in fact, a gun.

*(2) Whether the motion adequately identifies readily available witnesses whose testimony would support these new facts and show that the defendant should receive a new trial*

The statement identified Voelker and his wife both as witnesses. It does not say whether they would be willing to testify to the facts stated in the statement.

*(3) Whether the defendant's newly discovered evidence could have been produced at trial through the exercise of reasonable diligence*

The motion was silent on why Voelker and his wife did not testify at trial. Voelker's statement is not dated. The district court inferred that Rivas knew that Voelker was a witness because the statement says that Rivas jumped into Voelker's car after the murder. This was a reasonable inference. But could the evidence have been produced at trial with reasonable diligence? The statement does allege that Voelker and his wife were scared Jay would come after them. Rivas does not point to any mention of Voelker as a potential witness in the original record or that a subpoena was issued and that Voelker was unable to be located. But when speaking on his own behalf at resentencing, Rivas did allege that his trial attorney failed to investigate and call witnesses. It is not clear whether the statement can be characterized as "newly discovered."

8

A recent Supreme Court case persuades us to remand for an evidentiary hearing on this point. In *Moncla*, the Supreme Court remanded for an evidentiary hearing because Moncla's motion for a new trial identified four witnesses who purportedly had knowledge that someone else had committed the murder Moncla was convicted of, though it was unclear whether any of them were willing to testify. The motion alleged facts not heard by the jury, but the court did not know whether two of the witnesses' statements could be characterized as "newly discovered." The court held:

- the district court abused its discretion by denying an evidentiary hearing to determine whether the witnesses would testify to the facts alleged by Moncla;

- whether the substance of the evidence was sufficient to raise a reasonable probability of acquittal upon retrial; and

- whether Moncla could have introduced the evidence at his original trial through the exercise of reasonable diligence. 285 Kan. at 841.

Using *Moncla* as guidance, an evidentiary hearing is warranted if Voelker and his wife are willing to testify. While Rivas has not yet shown that Voelker's testimony could not have been produced at trial, he must do so to be successful on his motion on remand. One of the reasons the district court denied the motion was because Voelker did not testify at the hearing. But Rivas had simply filed this statement in support of his resentencing hearing and had not yet asked for a new trial based on newly discovered evidence. It was the court that treated Voelker's statement as a motion for a new trial, not because Rivas requested it. The matter needs to be set for an evidentiary hearing.

We affirm Rivas' sentence, reverse in part, and remand the case with directions.

9