NOT DESIGNATED FOR PUBLICATION

No. 121,635

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDDIE GILLESPIE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed October 9, 2020. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM:  In January 1997, Eddie Gillespie pled guilty to two counts of premeditated first-degree murder and one count of aggravated robbery. In February 1997 and in accordance with the plea agreement, the district court sentenced Gillespie to life in prison with a mandatory minimum term of 80 years, which were imposed as two consecutive hard 40 terms. Gillespie never filed a direct appeal. In April 2019, Gillespie filed a motion under K.S.A. 2019 Supp. 60-1507 alleging that his sentence was illegal, he was mentally incompetent to enter a plea agreement, and his trial counsel was ineffective for failing to observe these first two issues. The district court summarily denied

1

Gillespie's motion as untimely, and Gillespie appealed. Because the district court correctly determined that Gillespie failed to establish the requisite manifest injustice to extend the one-year filing deadline outlined in K.S.A. 2019 Supp. 60-1507(f), we affirm the district court's denial of Gillespie's motion as untimely.

FACTS

On January 14, 1997, Gillespie pled guilty to two counts of premeditated first-degree murder in the 1996 shooting deaths of James McClure and Robert Hubble and one count of aggravated robbery in connection with the killings. In exchange for Gillespie's guilty plea on all three counts, he agreed to a life sentence on the murder charges and to serve two consecutive hard 40 terms before being eligible for parole. He further agreed to serve a concurrent 85-month prison sentence for the aggravated robbery charge. As a part of the plea agreement, Gillespie was required to stipulate to certain facts that supported three aggravating factors alleged by the State. Gillespie also was required to join the State in recommending to the district court that these three aggravating factors were proven beyond a reasonable doubt and that no mitigating circumstances that existed at the time would outweigh those aggravating factors. According to the plea agreement, Gillespie was not allowed to challenge his sentence in any way, including on direct appeal or through a collateral attack. In signing the plea agreement, Gillespie asserted that he read the plea agreement, he understood the agreement, he was in full control of his mental faculties, and he agreed to all the terms. At the plea hearing, the court accepted Gillespie's guilty plea and found him guilty of the crimes charged following a detailed factual basis Gillespie provided to the court admitting the crimes.

On February 13, 1997, the case proceeded to sentencing. The district court went through each of the aggravating factors listed in the plea agreement, and the parties once again stipulated that the aggravating factors existed beyond a reasonable doubt and would not be outweighed by any mitigating circumstances. The district court then found that all

2

three aggravating factors existed beyond a reasonable doubt and that no mitigating circumstances outweighed any of those factors. It then sentenced Gillespie under the terms of the plea agreement: life in prison with a mandatory minimum 80-year term for the murder charges and a concurrent 85-month prison sentence for the aggravated robbery charge. Gillespie never filed a direct appeal.

On February 21, 2014—17 years after Gillespie's sentence was imposed—he filed a pro se motion to correct an illegal sentence under K.S.A. 22-3504. Gillespie generally argued that his sentence was illegal because the aggravating factors found in his case were not proven to a jury beyond a reasonable doubt and because the district court failed to evaluate and weigh the aggravating factors against any mitigating circumstances in his case. In its response, the State argued that the plea agreement prohibited Gillespie from challenging his sentence, he agreed to recommend that the court find the aggravating factors beyond a reasonable doubt, he agreed to recommend that none of those factors would be outweighed by any possible mitigating circumstances, and the sentence imposed conformed to the applicable statutes and was not ambiguous. In denying Gillespie's motion on May 19, 2014, the district court adopted the State's response as its basis for doing so.

On August 1, 2017, Gillespie filed another pro se motion, this time to modify his sentence under K.S.A. 2017 Supp. 21-6628. In that motion, Gillespie alleged that his mandatory hard 40 sentences were unconstitutional in light of recent caselaw and that the district court was required to reduce his sentence. The State incorporated its previous response to Gillespie's motion to modify an illegal sentence and once again reiterated that Gillespie was prohibited from challenging his sentence in any way. On November 8, 2017, the district court denied Gillespie's motion finding that Gillespie was prohibited from attacking his sentence under the plea agreement.

Gillespie filed a K.S.A. 60-1507 motion on April 22, 2019—over 22 years after his conviction. In that motion, he alleged four specific issues: (1) his sentence was illegal because the district court lacked jurisdiction to enter it, (2) he was mentally incompetent at the time he entered his guilty plea, (3) his trial counsel was ineffective for failing to recognize the first two issues, and (4) these three issues constituted manifest injustice. Gillespie further stated that the only evidence needed to support these claims came from Gillespie himself, his trial counsel, and the transcripts of the plea and sentencing hearings. Gillespie also alleged the following:

"Petitioner's mental incompetency has prevented him from being able to address these claims on his own. He has had to enlist the aid of other prisoners to prepare his legal papers for him, which itself was contingent upon an incompetent petitioner's perception of the events surrounding his circumstances as well as that assisting prisoner's lack of law training."

In an order dated June 14, 2019, the district court summarily denied Gillespie's K.S.A. 60-1507 motion without a hearing. It specifically found that his motion was untimely and that Gillespie failed to allege the requisite manifest injustice needed to extend the one-year filing deadline as outlined in K.S.A. 60-1507(f). The district court determined that Gillespie failed to provide any explanation as to why he could not have addressed his arguments within the one-year timeframe, he provided no evidence about his alleged mental incompetency, he gave no explanation as to why he waited 22 years to assert these claims, and he failed to allege a claim of actual innocence. Gillespie appeals the district court's summary denial of his motion.

ANALYSIS

Where, as here, the district court summarily denies a K.S.A. 60-1507 motion without an evidentiary hearing, this court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not

4

entitled to any relief. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019); *Edgar v. State*, 294 Kan. 828, 836-37, 283 P.3d 152 (2012). To avoid summary denial of the motion, a movant bears the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing. The movant must make more than conclusory contentions and must state an evidentiary basis supporting each claim or an evidentiary basis must appear in the record. *Edgar*, 294 Kan. at 836. If no such basis exists, the district court is not required to conduct an evidentiary hearing. *Moncla v. State*, 285 Kan. 826, Syl. ¶ 1, 176 P.3d 954 (2008).

Generally, K.S.A. 2019 Supp. 60-1507(f)(1) requires prisoners to file a postconviction motion within one year of either: (1) a final appellate court order or termination of appellate jurisdiction or (2) the United States Supreme Court's denial of a petition for writ of certiorari or its final ruling. As Gillespie correctly notes in his brief, this provision first became effective on July 1, 2003—over six years after Gillespie's conviction. See *Hayes v. State*, 34 Kan. App. 2d 157, 158-59, 115 P.3d 162 (2005). In *Hayes*, a panel of this court found that a movant whose conviction became final before the statute went into effect could comply with the one-year time limitation by filing a K.S.A. 60-1507 action on or before June 30, 2004. 34 Kan. App. 2d at 161-62. While Gillespie's conviction was final before July 1, 2003, he concedes on appeal that he failed to file his postconviction motion until April 2019—almost 15 years beyond the deadline.

Because Gillespie failed to timely file his K.S.A. 60-1507 motion, he had the burden to prove by a preponderance of the evidence that an extension of the one-year time limit was necessary to prevent a manifest injustice. See K.S.A. 2019 Supp. 60-1507(f)(2); Supreme Court Rule 183(g) (2020 Kan. S. Ct. R. 223); *White v. State*, 308 Kan. 491, 496, 421 P.3d 718 (2018). The Kansas Supreme Court has defined manifest injustice as something "'obviously unfair'" or "'shocking to the conscience.'" 308 Kan. at 496. As Gillespie filed his postconviction motion after the Kansas Legislature amended K.S.A. 60-1507(f)(2), these amendments control this court's evaluation of whether

5

Gillespie alleged the requisite manifest injustice and not the factors outlined in *Vontress v. State*, 299 Kan. 607, 325 P.3d 1114 (2014), *superseded by statute as stated in White*, 308 Kan. 491. See *White*, 308 Kan. at 503 (holding that 2016 amendments to K.S.A. 60-1507[f] do not apply retroactively to motions filed before July 1, 2016). Thus, in determining whether Gillespie appropriately alleged manifest injustice, this court may only consider the following: reasons why Gillespie failed to file the motion within the one-year deadline or whether he sets forth a colorable claim of actual innocence. See K.S.A. 2019 Supp. 60-1507(f)(2)(A). Because Gillespie does not allege any colorable claims of actual innocence in his original motion or on appeal, this court's inquiry will be limited to determining whether Gillespie established obviously unfair or shocking reasons that prevented him from filing his motion on or before June 30, 2004. See *White*, 308 Kan. at 496.

In his original motion, Gillespie argued four specific reasons that allegedly supported a finding of manifest injustice: (1) his consecutive hard 40 sentence was illegal, (2) he was mentally incompetent at the time he entered his guilty plea, (3) his trial counsel was ineffective for failing to recognize these two issues, and (4) his mental incapacity prevented him from seeking the legal assistance he needed to file his K.S.A. 60-1507 motion. On appeal, Gillespie only argues that the fourth reason constitutes manifest injustice: that his mental incapacity prevented him from seeking appropriate legal assistance to file his K.S.A. 60-1507 motion. But aside from a general conclusory statement in his original motion about his mental incapacity, Gillespie provided no real evidence about that condition. He failed to provide any evidence to establish what his condition was, whether he was ever evaluated and/or treated for it, whether that condition prevented him from functioning such that he could file his K.S.A. 60-1507 motion, or any other facts from which we could conclude that he was mentally incapacitated and that this mental incapacitation prevented him from filing his K.S.A. 60-1507 on or before June 30, 2004. While counsel on appeal argues that Gillespie alleged he suffered from hallucinations at the time he entered his plea and that it could be true that these

6

hallucinations went untreated all these years, these statements, without support, are nothing more than mere speculation.

Further evidence in the record also contradicts Gillespie's assertions on appeal. Notably, the record shows that he previously filed pro se postconviction motions attacking his sentence in 2014 and 2017. This is significant because Gillespie's alleged condition did not appear to prevent him from filing those motions or at the very least, seeking assistance in preparing and filing those motions.

For the reasons stated above, the record conclusively shows that Gillespie failed to allege a valid basis for manifest injustice and is therefore not entitled to relief. We conclude the district court did not err in denying his K.S.A. 60-1507 motion as untimely.

Affirmed.