NOT DESIGNATED FOR PUBLICATION

No. 120,341

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DOUGLAS ABEL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed September 27, 2019. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

PER CURIAM: A jury convicted Douglas Abel and his codefendant, Ramon Noriega Jr., of felony murder, aggravated burglary, and aggravated robbery. Abel's convictions were affirmed on direct appeal. He previously filed a first K.S.A. 60-1507 motion, which the district court denied, and we affirmed that denial on appeal.

In this appeal we take up Abel's second motion under K.S.A. 60-1507, filed 10 years after the first motion, in which Abel argues there is new evidence demonstrating that the State's key trial witness against him has recanted his testimony. Without holding an evidentiary hearing, the district court originally denied the motion for being successive

1

and untimely. On appeal, a prior panel of this court determined that the district court erred when it failed to hold an evidentiary hearing based on the newly discovered facts. That panel remanded the case to the district court to consider this issue only. On remand, the district court held an evidentiary hearing and determined that Abel's alleged new information was not new, nor was it credible, and denied Abel a new trial. Abel now appeals this denial, arguing the district court did not properly consider the materiality of the new evidence. Since our review of the record indicates that the district court properly analyzed the materiality of the evidence and did not abuse its discretion when it determined the proffered evidence was not new and not credible, we affirm the denial of Abel's second K.S.A. 60-1507 motion.

FACTS

The facts of Abel's underlying criminal case are set forth in extensive detail in the direct appeal of Abel's codefendant, *State v. Noriega*, 261 Kan. 440, 441-45, 932 P.2d 940 (1997), and we will not reiterate them in full in this opinion. Highly summarized, the facts at trial showed that Topeka coin collector Sidney Robinson was found dead of gunshot wounds at his residence on January 11, 1994. Various coins and Robinson's vehicle were missing from his home.

The State's key witness at trial was Larry Baier, who testified he and a neighbor of Robinson had been drinking at a tavern on the night of January 9-10, 1994, and during the evening Baier was introduced to Noriega and Abel. After leaving the bar during the early morning hours of January 10, Baier had been on the street near Robinson's house when he heard gunshots. A short time later Baier testified that he observed two men, whom he later identified as Noriega and Abel, running on the street away from Robinson's house.

Investigating officers later interviewed Baier several times about Robinson's death. Baier initially claimed he knew nothing about the murder and made various other contradictory claims. At trial Baier admitted he had originally lied to the officers about his knowledge of the crime. While the investigation was underway, Baier was arrested for parole violation. While in custody for this parole violation, Baier testified he was confronted by police who told him he was a suspect in the homicide, but police would try to help with his parole violation if he cooperated with the murder investigation. After this, Baier ultimately identified Noriega and Abel as the individuals he had seen running from Robinson's house following the gunshots. Baier also admitted to entering Robinson's house after the murder and stealing food and a wheat penny from the residence.

Another witness at trial, Bobby Shutts, a friend of Abel, testified that Abel had dropped off a handgun at his house prior to the murder, but then retrieved it shortly before Robinson was killed. Shutts also said that Abel later gave him coins to dispose of after the homicide had been committed.

A jury convicted Abel of first-degree felony murder, aggravated burglary, and aggravated robbery. The district court sentenced Abel to life in prison, and his convictions were affirmed on direct appeal. *State v. Abel*, 261 Kan. 331, 932 P.2d 952 (1997).

Abel filed his first K.S.A. 60-1507 motion on February 4, 1998. He argued eight grounds for relief which included claims of violation of various constitutional rights and that his trial counsel was ineffective for several reasons. The district court summarily denied this motion over one year later. This court affirmed the district court's denial on July 18, 2000. *Abel v. State*, No. 83,291, unpublished opinion filed April 14, 2000.

Ten years after he filed his first K.S.A. 60-1507 motion, Abel filed a second K.S.A. 60-1507 motion. In this motion, Abel maintained that Baier recanted his testimony. The motion included affidavits from Baier and Norman Kline, who corroborated Baier's alleged facts. In this second motion, Abel alleged three issues. First, he argued that Baier's recanted testimony showed that the police coerced his testimony and that the State convicted Abel based on perjured testimony. Second, he contends that the State withheld the fact that it offered deals to Baier and Bobby Shutts in exchange for their testimony. Third, Abel maintained that his trial counsel was ineffective for failing to investigate or call Kline and other witnesses and in failing to cross-examine witnesses adequately.

In support of Abel's motion, Baier and Kline prepared affidavits. In Baier's affidavit, he contended the Topeka Police Department coerced him into lying about Abel and Noriega's involvement in the murder. Baier also stated that he lied about seeing Abel and Noriega on the street on the night of the murder. Kline stated in his affidavit that he was a roommate of Baier at the time of the murder. The affidavit also stated that Baier told Kline that if Baier did not identify Abel and Noriega as the persons he saw coming from the victim's home, the police would charge Baier with Robinson's murder. Kline also claimed that Baier tried to tell the detectives the truth about what he saw that night, but the detectives did not believe Baier.

The district court denied Abel's second motion without holding an evidentiary hearing because it was successive and untimely. Abel appealed to our court, arguing that the district court should have granted an evidentiary hearing on his claim of newly asserted evidence arising from Baier and Kline's affidavits. *Abel v. State*, No. 103,381, 2011 WL 3795240 (Kan. App. 2011) (unpublished opinion). A panel of our court held:

> "At first glance, it would appear that Abel's claim of newly discovered evidence
> does not meet the first part of *Moncla*'s three-part inquiry because this is yet another

4

attack on Baier's credibility which was extensively disputed at trial. [*Moncla v. State*, 285 Kan. 826, 840, 176 P.3d 954 (2008).] However, the addition of the information from Kline could be considered as a new fact to be utilized in evaluating Baier's credibility. When considering the second part of the *Moncla* inquiry, Abel does identify available witnesses whose testimony would support the allegedly new facts. Finally, when considering the third step of the *Moncla* trilogy it is noted that Kline's affidavit was not available until January 22, 2008, and therefore was not available for use at trial. This court therefore concludes that a hearing should have been conducted by the district court on Abel's claims of newly discovered evidence." 2011 WL 3795240, at *5.

Abel's case was "[r]eversed and remanded for consideration solely upon the issue of whether Abel's K.S.A. 60-1507 motion should be granted based upon newly discovered facts." *Abel*, 2011 WL 3795240, at *6. The mandate was issued on March 14, 2012.

Following remand, the district court held an evidentiary hearing on September 12, 2013. Four witnesses testified on behalf of Abel: Baier, Kline, Carole Reyes Hard (who had previously lived with Robinson), and Abel. Two witnesses testified on behalf of the State: retired Sergeant Randy Mills and retired Detective Douglas Eby.

At the evidentiary hearing, Baier testified that he tried to tell the detectives that he did not see anyone, but the detectives coerced him into identifying Abel and Noriega. Baier testified that he lied when he told police that he saw Abel running by the victim's home—he asserted that he could not see anyone because he was drunk and it was nighttime. Baier claimed that police showed him pictures of Abel and other people and suggested to him that he identify Abel. Baier also testified that police threatened to implicate him in the murder if he did not identify Abel. Baier testified that he told Kline the Topeka Police Department coerced him into lying and identifying Abel and Noriega. Baier also testified that he recanted his previous testimony that he saw Abel "[b]ecause

5

ever since that day, I knew I was doing something wrong. It was just eating at me all the time."

Kline testified at the evidentiary hearing that Baier told him detectives informed Baier that Abel and Noriega were the individuals fleeing from the house. Kline testified that Baier told him detectives would charge Baier with the murder and that Baier tried to tell them it was not Abel and Noriega that Baier saw, but they would not believe Baier. Baier was Kline's roommate at the time of murder. Kline testified that the only information he knew about the case came from what Baier had told him. The police never interviewed him, and he had never previously testified to this information. Baier told him about what happened around three days after the murder and while Kline was in the hospital. Kline stated that he had not seen or spoken to Baier since January 1994—about three days after he was released from the hospital. Kline also testified that Noriega's mother had asked him to prepare the affidavit and that he was familiar with Noriega and his family.

Carol Reyes Hard testified that she had previously lived with Robinson, but was currently living in Oklahoma. She recalled telephoning Robinson later in the day on January 10, 1994, which was inconsistent with the State's allegations that he was murdered in the early morning hours of that day.

Almost four years after the district court held the evidentiary hearing, the district court issued a memorandum decision and order denying Abel's motion for a new trial. The decision made specific findings about Baier's and Kline's credibility. As to Baier's affidavit and testimony, the district court held:

> "In reviewing Baier's recantation, the court does not believe it to be true based on the record in this case, and that his testimony and [a]ffidavit should receive any weight.

6

"In recognizing a review of the record in this case, and cognizant of the rules that a court should look with disfavor and with suspicion at the recantation of a prosecution witness' testimony, as well as perjured testimony, this court cannot find that Baier's [a]ffidavit or testimony at the evidentiary hearing offer any new discovered evidence. Further, the court does not believe Baier's testimony or [a]ffidavit."

As to Kline's affidavit and testimony, the district court held:

"This court has grave concerns about the materiality of the evidence sought to be admitted through Kline and his [a]ffidavit. As has been noted, the evidence is a re-packaging of Baier's credibility issues that have been thoroughly introduced and evaluated—except for the part that Kline has not been involved. However, the testimony [is] offered to impeach or discredit the testimony of a witness—Baier.

"The court also has concerns about the truth of the newly discovered evidence. In the [f]indings of [f]act, the court determined that at the time Baier allegedly told Kline about the information contained in the affidavits, Kline was in the hospital for either a blood thinner issue, or an attempted suicide. The court further found that Baier and Kline have not talked to each other since that 1994 conversation. The court further found that Kline's [a]ffidavit was prepared by the mother of one of the defendants. The court found that Kline testified that he knew both defendants in the case and that he knew the Noriega family. The court found it incredible and unbelievable that someone in Kline's hospitalized situation in 1994, would clearly and accurately remember a conversation some 14 years later, and then be able to sign an affidavit in detail about that conversation.

"This court is not satisfied that the [a]ffidavit and testimony of Kline are reliable. The court does not believe the testimony or [a]ffidavit of Kline.

"In addition, if this information had been presented at the prior trial, the court believes there is little likelihood that there would be a different result. The jury already heard about the multiple issues raised about Baier's inconsistent statements to the detectives. The jury heard about the various identification issues. The jury heard Baier's testimony at trial. The jury saw the video-taped interview and whatever the nature of the contact and context between the detectives and Baier. . . .

"In assessing the credibility of the newly proffered evidence, the court believes there is little credibility to the newly proffered evidence by Kline and Baier. The

7

evidence is being used to impeach or discredit Baier as a witness. The court does not believe that such evidence is of such materiality that it is likely to produce a different result upon retrial."

Abel timely filed this appeal from the district court's denial of his motion.

ANALYSIS

Abel argues the district court erred in denying his K.S.A. 60-1507 motion. After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2019 Kan. S. Ct. R. 228). The district court did so following the evidentiary hearing on remand. We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). Substantial evidence is legal and relevant evidence that a reasonable person might view as sufficient to support a conclusion. *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007).

The parties agree that when the case was remanded to the district court for an evidentiary hearing, we framed the issue as a motion for new trial based on newly discovered evidence. We review an order denying a request for a new trial based on newly discovered evidence for an abuse of discretion. *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Abel's case was "remanded [by this court] for consideration solely upon the issue of whether Abel's K.S.A. 60-1507 motion should be granted based upon newly

8

discovered facts." *Abel*, 2011 WL 3795240, at *6. And after the district court conducted the evidentiary hearing on remand, the court issued an order titled "Memorandum Decision and Order Denying Motion for New Trial." Because the district court and the parties treated this claim as a motion for a new trial, we will apply the abuse of discretion standard of review. See *State v. Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013) (treating movant's motion for new trial as motion for habeas relief under K.S.A. 60-1507); *Moncla*, 285 Kan. at 839-40 (applying abuse of discretion standard of review when claim of newly discovered evidence is raised in context of K.S.A. 60-1507 proceeding). Abel bears the burden of demonstrating an abuse of discretion. See *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015).

To establish the right to a new trial based on newly discovered evidence, a criminal defendant must establish:  (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial. *State v. Laurel*, 299 Kan. 668, 676, 325 P.3d 1154 (2014).

The Kansas Supreme Court has explained that when determining the materiality of alleged newly discovered evidence,

> "the district court must assess the credibility of the newly proffered evidence. Ordinarily, a new trial is not warranted when the newly proffered evidence merely tends to impeach or discredit the testimony of a witness. But, even when the evidence tends to impeach the testimony of a witness, the presence or absence of corroborating evidence is another factor to consider in determining whether the newly discovered evidence is of such materiality that it is likely to produce a different result upon retrial. [Citations omitted.]" *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 (2012).

Here, the newly discovered evidence offered by Abel was the affidavits of Baier and Kline. In the order denying Abel a new trial, the district court addressed each piece of

9

evidence separately and found the evidence presented by Baier was not new evidence and was not credible. The district court found that Kline's affidavit "may constitute newly discovered evidence," but found the evidence was not credible.

On appeal, Abel seems to argue that although the district court must assess the credibility of the newly proffered evidence, "it cannot merely discard evidence it does not believe, but rather must weigh its effect on the evidence at trial." Abel offers no support for this position and Kansas caselaw suggests this argument is incorrect.

We do not reassess the district judge's credibility determination made after an evidentiary hearing. *Laurel*, 299 Kan. at 676-77; see *State v. Betancourt*, 301 Kan. 282, 302, 342 P.3d 916 (2015). And the Kansas Supreme Court has held that "[z]ero credibility means zero materiality and zero chance that the outcome of a retrial would be different." *Laurel*, 299 Kan. at 677. Here, the district court based its materiality determination on the credibility—or lack thereof—of Kline's and Baier's testimony and of the affidavits they submitted in support of Abel's K.S.A. 60-1507 motion. Thus, the district court can rely on credibility determinations for making findings on the materiality of the newly proffered evidence.

Although not entirely clear, it appears Abel is arguing on appeal that the district court abused its discretion by failing to consider whether the newly proffered evidence would have affected the outcome of the trial. Apart from arguing the district court made one error of fact, Abel does not seem to be arguing the district court made any errors of fact or abused its discretion in determining the newly proffered evidence was not new and not credible. In response, the State argues that the district court properly found the evidence was not new information, not credible, and contends the district court properly analyzed its materiality. To resolve this, we will analyze each element of the district court's decision.

*Baier's affidavit and testimony did not offer any newly discovered evidence.*

The district court held that Baier's affidavit and testimony from the evidentiary hearing did not offer new evidence. Rather, the district court found "[i]t is re-packaged and offered to impeach or discredit his trial testimony." In its order, the district court reasoned that the jury heard and saw all of the evidence on the issues raised in Baier's affidavit in one or more forms of impeachment at the trial. The district court acknowledged that in the opinion remanding this case for an evidentiary hearing, our court noted that this was not newly discovered evidence but was another attack on Baier's credibility. *Abel*, 2011 WL 3795240, at *5. The district court also pointed out that at the evidentiary hearing, Abel conceded that the information in Baier's affidavit was not new. In addition to the district court finding that Baier's affidavit and testimony did not offer new evidence, the district court also found that the evidence was not credible.

On appeal, Abel argues that the district court made an error of fact when it assumed that the jury saw the entire videotaped police interview of Baier. But Abel does not support this assumption with a citation to the record and a review of the record cannot verify that the district court assumed the jury saw the entire video. The district court addressed the videotape briefly when the court held: "All the issues raised by Abel's counsel about Baier's statements to detectives and trial testimony have been addressed through various hearings, trial, post-trial issues, direct examination, cross-examination, the video tape and more. The jury heard and saw it all in one or more forms of impeachment at trial."

Even if the district court assumed the jury watched the police interview in its entirety, this was not an abuse of discretion. As the court determined, the jury heard all of the issues raised by Baier through various forms of evidence and the defense used this evidence for impeachment purposes at trial. During the trial, Baier's credibility was extensively disputed and he admitted to lying to law enforcement multiple times in front

11

of the jury. The jury also heard Baier testify that after he had been booked into jail on a parole violation, law enforcement told him he was a suspect in the murder and if he cooperated in the investigation that law enforcement would keep him out of prison. The same issues were addressed at the evidentiary hearing when Baier testified. Thus, it was not an abuse of discretion for the district court to find that the jury heard all of the evidence Baier submitted through his affidavit and testimony, even if the district court assumed the jury saw the video in its entirety.

It was also not an error of law for the district court to make this finding. In the district court's order, the court was "cognizant of the rules that a court should look with disfavor and with suspicion at the recantation of a prosecution witnesses' testimony, as well as perjured testimony." The court relied on Kansas precedent to make its decision, and Abel does not dispute this finding.

Additionally, reasonable people could take the view adopted by the district court that this evidence was not new. Abel's counsel at his evidentiary hearing conceded as much, and our prior panel made a similar finding when it remanded this case for an evidentiary hearing. *Abel*, 2011 WL 3795240, at *5. Thus, the district court did not abuse its discretion when it found that Baier's affidavit and testimony did not satisfy the first part of the test for determining whether Abel should be given a new trial based on newly discovered evidence. See *Laurel*, 299 Kan. at 676.

*Kline's information was not credible and would not have affected the outcome at trial.*

After the district court addressed Baier's affidavit and testimony, the court found that Kline's information did not present newly discovered evidence. Even so, the district court held that Kline's information "may constitute newly discovered evidence" because Kline was never interviewed, never testified, and submitted his affidavit over 10 years after the trial. Abel does not dispute this finding.

12

Because the district court found that Kline's information "may" be newly discovered, it also addressed the information's materiality. The court found that Kline's affidavit and testimony were not credible and were an attempt to impeach or discredit Baier. As stated above, we do not reassess the district court's credibility determination made after an evidentiary hearing. *Laurel*, 299 Kan. at 676-77. And by finding the information to not be credible, the district court did not abuse its discretion when it found the evidence is not of such materiality that it is likely to produce a different result upon retrial. See 299 Kan. at 677 ("Zero credibility means zero materiality and zero chance that the outcome of a retrial would be different.").

That said, despite Abel's assertion that the district court disregarded evidence it did not believe, the district court addressed whether the newly proffered evidence would have produced a different result at trial. See *Laurel*, 299 Kan. at 676. The district court found that if this information had been presented at the prior trial, "there is little likelihood that there would be a different result." In making this finding, the district court examined other evidence presented at trial.

The district court reasoned that there would not be a different result at trial because the jury had heard the information that Kline's affidavit and testimony spoke to. The jury already heard about Baier's inconsistent statements to police and the jury watched Abel's potentially coercive interview with police when Abel's trial counsel presented it in an effort to dispute Baier's credibility at trial. But in addition to what the jury had already learned about Baier, it also heard the testimony of Bobby Shutts about Abel's possession of a handgun just before the murder and his possession of Robinson's coins, both of which provided strong circumstantial evidence of Abel's participation in the murder of Robinson.

At trial, Shutts testified that Abel, Noriega, and himself left his house to go to a bar on the night of the murder. Shutts testified that before they left, Abel had shown him

13

his gun and testified to what type of gun it was and what it looked like. Abel left the gun at Shutts' house when they left to go to the bar. About 15 minutes after Shutts got home that night, Abel knocked on his door and asked for his gun, and Shutts gave it back to him. Within the next day or two, Abel brought Shutts some coins, which Shutts proceeded to sell and then split the earnings among Abel, Noriega, and himself. Shutts testified that Abel had told him on the telephone that he (Abel) had "fucked up" and "[w]hen they got the coins, something went wrong." The next weekend Abel informed Shutts he had disassembled the gun and thrown it in the Kansas River.

Abel briefly makes an argument that the district court abused its discretion when it failed to consider the additional evidence presented by Carol Reyes Hard and the whole video of Baier's interrogation. Abel argues the district court "fail[ed]" to assess the evidentiary value of the new information supplied by and flowing from Kline's affidavit in relation to the other evidence from trial. This is the entirety of Abel's argument on this issue and the State argues that this issue should be deemed waived and abandoned for failing to brief the argument.

Although the district court did not specially address what corroborating evidence it was analyzing, the record reflects that the district court did consider corroborating evidence when it discussed the materiality of Kline's information. Our independent review of Hard's testimony and affidavit supports the district court's conclusion that the outcome of the trial would not have been different if this information was presented at trial. Additionally, in the factual findings of the order denying Abel a new trial, the district court addressed in extensive detail what happened in each police interview with Baier. This shows that the district court did review and consider the videos in their entirety. The court also addressed the testimony of the police officers who interviewed Baier at the time of the murder, though Abel does not argue this should have been considered.

14

In summary, we hold that the district court properly found that the newly proffered evidence was not new and, even if it was, the evidence was not credible nor would it have affected the outcome at trial. The district court's decision was supported by substantial competent evidence, as required in a K.S.A. 60-1507 motion, and the district court did not abuse its discretion by finding Abel was not entitled to a new trial based on newly discovered evidence.

Affirmed.