NOT DESIGNATED FOR PUBLICATION

No. 121,940

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLEVELAND HENDERSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL judge. Opinion filed September 4, 2020. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*James Antwone Floyd*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS and POWELL, JJ.

PER CURIAM: After his convictions and sentences were upheld on direct appeal, Cleveland Henderson sought habeas relief under K.S.A. 60-1507, claiming new evidence exonerated him. Specifically, his codefendant alleged in an affidavit that Henderson did not participate in the crime. After conducting an evidentiary hearing, the Wyandotte County District Court denied his motion. Henderson now appeals, claiming the district court should have accepted the affidavit's statements as true and granted him a new trial. We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2012, the State jointly charged Henderson and Rudolph Wallace with two counts of aggravated robbery and separately charged Henderson with one court of criminal possession of a firearm. Nearly a year later, the State amended its complaint and eliminated one of the aggravated robbery counts against them. Wallace took a plea before trial.

During his case-in-chief, Henderson presented an alibi defense through his own testimony and that of Rebecca Horton, who testified she was with Henderson all day and night on the date of the robbery. We quote the relevant facts as recited by the panel that considered Henderson's direct appeal:

"On June 24, 2012, three Kentucky Fried Chicken (KFC) employees were cleaning up when two men entered the restaurant. The two men jumped over the counter; one man grabbed the cashier, put a gun to her back and neck, and demanded that she '[g]o to the office.' The other man grabbed the shift manager and told her to open the drive-thru cash register. The men then told the employees to open the safe. The men took the money and ordered the two employees to the back of the restaurant where they were forced to lay on the floor and to count to 100. A third employee managed to escape; he later returned to the restaurant.

"Officer Michael Boczek was one of the officers sent to the KFC on June 24, 2012. When he arrived, the employees stated that the two men had taken off running on foot. Officer Boczek saw one of the men running, notified other officers, and 'gave chase in [his] vehicle.' Officer Boczek caught up to the man and ordered him to stop. When the man failed to obey, Officer Rodney Ashley tased the suspect. The man, Rudolph Wallace, was handcuffed and taken into custody.

"Sergeant Michael Howell was also sent to the location of the robbery. When he arrived, he learned that one suspect had been apprehended. He then conducted a walkthrough of the area. In plain view, Sergeant Howell found a plastic bag containing

2

money and a Kansas Department of Corrections identification card belonging to Wallace. Sergeant Howell also saw a maroon van parked near the area. The window on the driver's side was up but the passenger side windows were down. The keys were left in the ignition. Sergeant Howell asked another officer to do a computer check on the tags to make sure the vehicle did not belong to one of the employees. The van belonged to Lakedra Freeman, Henderson's girlfriend.

"Detective Jamie Miller contacted Freeman to verify her ownership of the van. Detective Miller sought Freeman's consent to search the van; Freeman acquiesced. Inside the van, Detective Miller found two cellular phones, a baseball hat, and some other personal items. At least one, if not both, of the cellular phones belonged to Henderson. Freeman also told Detective Miller that she had let Henderson borrow the van on the morning of the robbery. After hearing this, Detective Miller gathered information and pictures of Henderson and created a lineup which included five other photographs. Detective Miller showed this photo lineup to one of the victims who identified Henderson. Henderson was later arrested.

"At trial, Henderson called Rebecca Horton as his alibi witness. Horton testified she was with Henderson '[a]ll day and all night' on June 24. Horton testified that she picked up Henderson and they went to the liquor store at around 9:30 or 10 a.m. Horton and Henderson went to the park and then checked into the Relax Inn between 10 and 12 a.m. She testified they spent the night at the Relax Inn and that Henderson fell asleep around midnight.

"During Horton's cross-examination, the jury learned Horton was in love with Henderson. Horton testified that she had been in love with him for about 20 years; she had his nickname tattooed on her chest. While Henderson was incarcerated, Horton wrote Henderson several love letters. In one of the letters, Horton said: 'I've been doing everything I'm supposed to do for someone you're in love with.' Horton signed her letters using Henderson's last name, even though they were not married.

. . . .

3

"On rebuttal, the State called Sam Patel. Patel helped manage the Relax Inn. Patel explained the process for checking in guests. Patel testified the checking in process involved giving the guest a card to fill out and then asking for identification. Patel said he used the ID to keep a record. Regarding Horton, Patel testified he knew her as a guest at the Relax Inn. The State asked, 'Do you recall whether or not you saw [Horton on June 23, 2012]?' Patel said, 'No.' Patel further explained the only record he had for anybody checking in was for a gentleman named [H.K.]. Patel said he saw Horton with H.K., but Horton did not check into her own room. Patel did not see Horton at all on June 24.

"During the cross-examination of Patel, Henderson['s counsel] asked about a disagreement between Patel and Horton, which took place on June 24. Patel again denied seeing Horton on June 24. When asked about H.K.'s reservation, Patel said he was there for 2 days—June 23 and 24—but he did not know if Horton used the room for those 2 days. Patel said he never saw Henderson with Horton; he had never seen Henderson at the Relax Inn." *State v. Henderson*, No. 110,917, 2015 WL 1882109, at *1-2 (Kan. App. 2015) (unpublished opinion).

The jury found Henderson guilty as charged, and on August 8, 2013, the district court sentenced Henderson to 233 months in prison.

Henderson filed a direct appeal, but another panel of this court affirmed his convictions and sentences. 2015 WL 1882109, at *8. The mandate was issued on February 2, 2016.

On May 1, 2018, Henderson filed his present K.S.A. 60-1507 motion, claiming his untimeliness in filing his motion was excused because he had new evidence that showed he was actually innocent. Henderson attached to his motion an affidavit from Wallace, his codefendant, alleging Henderson did not participate in the crime. The State argued in response that Henderson's motion should be dismissed as untimely because he did not present a colorful claim of actual innocence. The district court appointed counsel to

4

represent Henderson, who filed a supplemental 60-1507 motion alleging Henderson's second trial counsel was ineffective for failing to attack the eyewitness testimony.

On February 7, 2019, the district court held an evidentiary hearing on the motion. Henderson presented testimony from his first trial attorney, Patti Kalb; his second trial attorney, James Colgan; his codefendant, Wallace; and Wallace's counsel, Michael Highland. Henderson also testified at the hearing. The State called no witnesses, although the district court did take judicial notice of the court records for both Henderson and Wallace. At the conclusion of the hearing, the district court took the matter under advisement.

On April 5, 2019, the district court issued a written opinion denying Henderson's 60-1507 motion. First, the district court rejected the supplemental motion alleging ineffective assistance of counsel.

Second, the district court rejected Henderson's claim of actual innocence and held that Wallace's affidavit and subsequent testimony were not credible and would not produce a different result at a new trial. To reach this conclusion, the district court pointed to inconsistencies between Henderson's testimonies, Wallace's factual assertions during his plea and sentencing, Wallace's affidavit's claim that Henderson was not involved in the robbery, and Wallace's testimony at the 60-1507 evidentiary hearing. Ultimately, the district court denied Henderson's 60-1507 motion.

Henderson timely appeals.

DID THE DISTRICT COURT ERR IN DENYING HENDERSON'S 60-1507 MOTION?

On appeal, Henderson argues the district court erred in denying his 60-1507 motion. Specifically, he argues the district court was required to accept Wallace's

5

assertions in his affidavit as true and if the district court had done so, then Henderson would have been entitled to a new trial at which Wallace could present his alibi testimony. The State counters Henderson's argument by asserting Henderson is calling upon us to reweigh the evidence and argues the district court's ruling is based on substantial competent evidence.

In his appellate brief, Henderson does not raise any arguments regarding the district court's denial of his supplemental 60-1507 motion, which argued his second trial counsel provided ineffective assistance of counsel. Therefore, we will leave undisturbed the district court's rejection of this claim and will focus exclusively on Henderson's arguments for a new trial surrounding Wallace's alibi testimony. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding issue not briefed deemed waived or abandoned).

*Standard of Review*

It is well known that the district court has three options when handling a K.S.A. 2019 Supp. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Our standard of review depends on which of these options a district court uses. 300 Kan. at 881. Here, the district court denied Henderson's 60-1507 motion after a full

evidentiary hearing. Thus, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

*Additional Facts*

Wallace's affidavit attached to Henderson's 60-1507 motion states:

"I, Rudolph Wallace, being of lawful age and sound mmd, hereby state on my oath as follows:

"1. My name is Rudolph Wallace and I am currently an inmate at Lansing Correctional Facility.

"2. I am a co-defendant in Wyandotte County District Court Case No. 12CR859.

"3. Cleveland Henderson is my co-defendant in Wyandotte County District Court [Case] No. 12CR860.

"4. Mr. Henderson and I were charged on June 29, 2012, in Wyandotte District Court with Aggravated Robbery, K.S.A. 21-5420(b)(1), Battery, K.S.A. 21-5413(a)(1), Aggravated Assault, K.S.A. 21-5412(b)(1)(2), and interference with law enforcement, K.S.A. 21-5904(a)(2).

"5. Mr. Henderson is actually innocent of the crimes committed in District Court Case No. 12CR860.

"6. Mr. Henderson was not with me on the night of June 24, 2012, when I committed the crimes that were charged in District Court Case Numbers 12CR859 and 12CR860.

"7. Unbeknown to Mr. Henderson I took the vehicle that was used in the commission of the crimes charged in District Court Case Numbers 12CR859 and 12CR860.

"8. Mr. Henderson had no knowledge that I was going to use the vehicle to commit the crimes charged in District Court Case Numbers 12CR859 and 12CR860.

"9. I take full responsibility for my actions that took place on June 24, 2012.

"10. Mr. Henderson has been wrongfully accused and convicted of the crimes for which he is actually not guilty of.

"11. I am willing to testify under oath in a court of law if called as a witness to the statements contained within this affidavit.

"12. I swear that this Affidavit is true and correct."

Before trial, Henderson filed a motion to sever, and that motion was joined by Wallace. In that motion, Henderson claimed he had borrowed the vehicle found at the scene from his girlfriend. Henderson further alleged he had left the vehicle in Missouri with the keys in it while he drove to a hotel with Horton in her vehicle, Wallace was aware where the vehicle was, and Wallace regularly used it when Henderson was not using it. The district court found these assertions contradicted Wallace's claim that Henderson did not know Wallace was using the vehicle.

At the 60-1507 evidentiary hearing, Kalb testified she remembered telling Highland (Wallace's counsel) that Henderson or Horton—she could not recall who—said Wallace was going to exonerate him. She testified she wanted to talk to Wallace because if he was going to exonerate Henderson, then she wanted to called Wallace as a witness. Highland told her as long as she did not do anything to implicate Wallace, she could speak with Wallace concerning the alibi. However, Kalb never contacted Wallace because she was dismissed as counsel soon after. Kalb testified she may have spoken

8

with Colgan, Henderson's new trial counsel, about the background of the case but did not remember the essence of any of their conversations.

Wallace also testified at the evidentiary hearing. He testified he made an original statement in June 2014 that he and an unnamed person committed the robbery using Henderson's girlfriend's van and Henderson was not involved. Wallace told Highland that Henderson was not involved with the crime, but Highland advised him it would not be a good choice to testify for Henderson because Wallace was taking a plea deal, which prohibited him from testifying in Henderson's case. Highland advised Wallace that if he chose to testify for Henderson, Wallace would lose his plea offer. Wallace stated Henderson was not involved in the planning of the robbery and he and Henderson had not talked about committing the robbery together. Instead, Henderson was at the hotel room and he and Henderson had not talked about the commission of the robbery.

The district court took note of Wallace's plea and the circumstances surrounding it. At the plea hearing Wallace stated, "I plead guilty to me and another person committed the robbery." The district judge hearing Wallace's plea inquired, "You mean Cleveland Henderson?" to which Wallace shook his head in agreement. The prosecutor gave the factual basis supporting Wallace's plea, which included Henderson as the individual armed with the weapon and a participant in the robbery. The district judge who accepted Wallace's plea further noted the plea deal called for the State to recommend a downward durational departure should Wallace request one. In his downward departure motion, Wallace argued he was not the ringleader of the robbery but was a reluctant follower. Wallace also claimed he never possessed the gun that was brandished by his codefendant.

Highland testified he did not remember Wallace telling him Henderson was innocent and he did not remember and would not have told Wallace that once he had been sentenced that he had no right under the Fifth Amendment to the United States Constitution if Wallace wanted to testify on Henderson's behalf. Highland said he would

9

have told Colgan if Wallace had told him about his assertion that Henderson was not present at the robbery. While Highland could not remember having a conversation with Colgan about Wallace's alibi testimony, he did remember having a conversation with Kalb, Henderson's first trial counsel, but did not remember the specifics of the conversation.

Colgan testified that after he was appointed to represent Henderson he reviewed discovery and talked with Henderson. He investigated Horton's proposed alibi testimony but had no knowledge that Wallace was saying Henderson was innocent. About a year after Henderson's trial, Horton called Colgan about Wallace's affidavit and asked if Colgan could get Henderson the affidavit. But Colgan was not aware of the affidavit and told Horton she should send the affidavit to whoever was handling the case while Henderson's case was on direct appeal. This interaction was the first time Colgan was aware Wallace was claiming Henderson was innocent.

Henderson also testified at the evidentiary hearing. He stated he was never aware Wallace would say that he was not involved in the robbery. But Henderson also testified he talked to Kalb and Colgan about talking to Wallace to see if he would testify for him. Henderson testified he knew Wallace was at the robbery and he believed Wallace would have testified he was not with him.

At the jury trial, Horton testified she picked up Henderson on the morning of the robbery about a block from his house. Afterward, they left the vehicle used in the robbery at some apartment building, where she assumed a friend got the van. She and Henderson went to the liquor store around 9:30 a.m., then to the park, and then arrived at the Relax Inn before11 a.m. She claimed they were together the entire day and night at the hotel.

At trial, Henderson testified he called Horton to pick him up at the apartments, he left the van at a nearby apartment, and he left with Horton. They went to the liquor store

and then to the Relax Inn. Like Horton, he testified they were together all day and all night. Henderson found out about the robbery when he discovered Wallace was in jail. He insisted he was not with Wallace on the night of the robbery and testified Wallace frequently borrowed his van because he needed transportation to go places. Henderson testified that he had known Wallace for 20 years.

*Analysis*

A K.S.A. 2019 Supp. 60-1507 habeas corpus proceeding may be used to challenge a conviction based on newly discovered evidence. See *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008). In order to obtain a new trial on the basis of newly discovered evidence, a movant must establish (1) the exercise of reasonable diligence would not have produced the evidence at trial and (2) the evidence is so material that its production at trial would likely have yielded different results. *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 (2012).

At the outset, we note the district court made the finding that Wallace's affidavit was not newly discovered evidence. We are inclined to agree with this finding. See *State v. Redford*, 248 Kan. 130, 135, 804 P.2d 983 (1991) (codefendant's testimony concerning Redford's innocence known to Redford at time of trial and therefore not newly discovered evidence). But we need not resolve the issue because even if we assume the evidence was newly discovered, the district court also found Wallace's affidavit and subsequent testimony were not credible and would not have produced a different result at a new trial. We agree.

The district court concluded that the evidence likely would not have yielded different results because Wallace's affidavit and testimony lacked sufficient credibility to warrant a new trial and, even if a new trial was warranted, it was unlikely the jury would have returned a different verdict. To support this conclusion the district court found that

11

Henderson testified at trial that he and Horton left Henderson's vehicle at the apartments and then left in Horton's van to go to the liquor store and then the Relax Inn. Henderson testified Wallace had a habit of picking up Henderson's vehicle for transportation. But Wallace claimed he took the van without Henderson's permission.

Further, Henderson testified at trial that he did not see Wallace on the day of the robbery and was alone with Horton all day. Yet Wallace testified at the 60-1507 hearing that he and Henderson talked at the liquor store on the morning of the robbery, went to the hotel together, and then Wallace left the hotel alone and decided while out to commit the robbery. The district court held: "Wallace's testimony puts Henderson and him at the liquor store together and implies that they were at the hotel. It clearly contradicts Henderson's testimony and this court finds Wallace's testimony and affidavit regarding Henderson's involvement not credible." Moreover, Wallace's motion for a downward durational departure specifically stated his codefendant had a gun and referred to Henderson as his codefendant, not an unnamed person. The district court also held that Wallace's plea transcript did not corroborate his 60-1507 evidentiary hearing testimony. The State provided a factual basis that included Henderson's involvement, and Wallace agreed to that factual basis.

The district court ultimately concluded and emphasized:

> "This court has had the opportunity to view the demeanor of the witnesses when they testified and it frankly does not find Wallace credible and finds that while he did not testify at Henderson's trial, he is now recanting his [Wallace's] plea testimony. He is similar to a recanting witness in that he pleads guilty and agreed he was with Henderson as part of the factual basis, used Henderson having the gun to his advantage in obtaining a beneficial sentence and now wants to recant it all. Wallace lacks credibility and is why our appellate courts caution courts in considering such testimony."

12

On appeal, Henderson asks us to reject the district court's credibility determination. But district courts are in the best position to assess witness credibility, and appellate courts do not reweigh the evidence, reassess witness credibility, or resolve evidentiary conflicts. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). We must defer to the district court's credibility determination so long as there is some basis in fact for that determination. See *State v. Appleby*, 289 Kan. 1017, 1038, 221 P.3d 525 (2009).

Deferring to the district court's credibility determination, we conclude that even if Wallace's statements truly were not discoverable at the time of trial, they would not have been likely to change the outcome of the proceedings given the inconsistencies in the evidence. The district court's findings of fact were supported by substantial competent evidence and, therefore, sufficient to support the district court's conclusion this evidence did not warrant a new trial. The district court properly denied Henderson's 60-1507 motion.

Affirmed.