NOT DESIGNATED FOR PUBLICATION

No. 125,751

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CORBIN J. BREITENBACH,
*Appellant*,

V.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY GOERING, judge. Submitted without oral argument. Opinion filed May 24, 2024. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Corbin J. Breitenbach was convicted by a jury of attempted capital murder, rape (in the alternative to attempted capital murder), aggravated criminal sodomy, and aggravated burglary. After his convictions were affirmed in his direct appeal to Kansas Supreme Court, Breitenbach filed a K.S.A. 60-1507 motion seeking reversal of his convictions based on claims of ineffective assistance of counsel and judicial bias. He appeals the district court's denial of his motion after a nonevidentiary hearing.

Breitenbach represented himself for about seven months leading up to the trial and throughout the trial. As a result, the alleged failures of the lawyer who once represented

1

him in the district court are too attenuated from the trial to have compromised the jury verdicts. And, the district court's pretrial rulings denying additional DNA testing were neither evidence of nor the product of demonstrable judicial bias—they were simply decisional errors subject to review on direct appeal in the criminal case. Accordingly, we affirm the district court's dismissal of Breitenbach's K.S.A. 60-1507.

FACTUAL AND PROCEDURAL HISTORY

In June 2017, Breitenbach broke into an apartment late at night, sodomizing and violently strangling a seven-year-old girl identified as L.A. The young girl's mother awoke to the sounds of her daughter crying and discovered her lying in bed, naked, covered with a significant amount of blood. Police arrived on the scene, and investigators collected blood and fingerprint evidence from the apartment and from the apartment balcony.

Breitenbach represented himself at trial and for the seven months leading up to trial. He was initially represented by two public defenders—who each withdrew for personal reasons—before the court appointed public defender Jason Smartt. Breitenbach was not satisfied with Smartt's representation and filed a pro se motion requesting Smartt be removed from his case. After holding a hearing on the motion, the court found no reason to remove Smartt and denied Breitenbach's request. Breitenbach decided to waive his right to counsel and represent himself. A private investigator was appointed to assist Breitenbach throughout the case.

At trial, overwhelming evidence implicated Breitenbach in the crimes. Importantly, sperm cell DNA collected from an anal swab of the child was determined to belong to him. Additional evidence against Breitenbach included statements to his mother and grandmother that he hurt the girl; L.A.'s identification of Breitenbach as her attacker in a photo lineup; evidence of L.A.'s blood on Breitenbach's shoe; and evidence that

2

Breitenbach was in close proximity to the scene at the time of the crimes. The circumstances of Breitenbach's crimes are fully detailed in the Kansas Supreme Court's decision affirming his convictions on direct appeal and are not repeated here. See *State v. Breitenbach*, 313 Kan. 73, 483 P.3d 448, *cert. denied* 142 S. Ct. 255 (2021).

Following his convictions, the district court ordered Breitenbach to serve consecutive sentences of life with the possibility of parole after 592 months for attempted capital murder, life without the possibility of parole for aggravated criminal sodomy, and 172 months' imprisonment for aggravated burglary.

Breitenbach challenged his convictions on direct appeal, arguing that the district court erred by denying his request for independent DNA testing, refusing to appoint a new attorney to replace Smartt, and refusing to appoint a standby attorney after Breitenbach chose to represent himself. He also argued that the State violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to disclose exculpatory fingerprint-testing evidence. The Kansas Supreme Court affirmed Breitenbach's convictions, finding none of his arguments persuasive. *Breitenbach*, 313 Kan. at 99.

*Breitenbach's K.S.A. 60-1507 motion*

Following his direct appeal, Breitenbach filed a pro se K.S.A. 60-1507 motion raising four claims. He pursues two of those claims on appeal:

- Smartt was ineffective for failing to call witnesses, interview key individuals, investigate meritorious defense strategies, obtain all discoverable material, and subject the State's case to adversarial testing.

- The district court engaged in judicial bias by not allowing Breitenbach to admit an expert on DNA evidence to challenge the State's findings or independently test DNA evidence.

The district court held a nonevidentiary hearing on the K.S.A. 60-1507 motion, where it heard from Breitenbach's new appointed attorney—Casey Cotton—and the State. Cotton stated that Breitenbach's relationship with Smartt "was not a good attorney-client situation." Upon the district court's request, Cotton clarified that Breitenbach's ineffective-assistance-of-counsel claim raised two issues about DNA evidence: (1) Smartt failed to subject certain pieces of evidence—including sheets, the victim's clothing, and swabs from the victim—to DNA testing; and (2) Smartt failed to request that pieces of evidence tested by the Sedgwick County Regional Forensic Science Center be retested by an independent lab.

The State responded that Breitenbach's ineffective-assistance-of-counsel claim was conclusory because he failed to point to any concrete examples of what Smartt did or did not do during his representation of Breitenbach. The State added that Breitenbach did not explain how Smartt's performance effected the outcome of his trial, considering that he represented himself for a significant portion of the proceedings, including at trial. The State also argued that Breitenbach's judicial bias claim was a trial error that should have been raised in his direct appeal.

After considering the arguments, the district court denied Breitenbach's motion without an evidentiary hearing. It reasoned whether Smartt failed to perform certain tasks while acting as Breitenbach's attorney was irrelevant because Breitenbach represented himself at trial and seven months before, meaning he was responsible for any deficiencies in his defense. The court added that Breitenbach could "interview anybody that he thought needed to be interviewed [and] investigate whatever meritorious defense strategy that he thought he had." The court found it "difficult to blame Mr. Smartt for that, who

4

was absent from the case in the seven months preceding trial." It noted that Breitenbach "had the benefit of the private investigator" who "was capable of locating any number of independent DNA labs." And it found that Breitenbach could have asked the Board of Indigents' Defense Services to fund third-party DNA testing.

Lastly, the court mentioned that "nothing [prevented] Mr. Breitenbach from asking [for] items to be individually tested by some independent or some third DNA testing facility." But regardless, it found that independent DNA testing was not justified because Breitenbach failed to show that the testing at "the Sedgwick County Regional Forensic Science Center deviated from any accepted norm as it relate[d] to DNA testing." And the court concluded that Breitenbach's judicial bias claim was a trial error that was not properly raised in a K.S.A. 60-1507 motion.

Breitenbach appeals.

ANALYSIS

When a district court receives a K.S.A. 60-1507 motion, it can resolve it in one of three ways: (1) summarily deny it because the motion, files, and case records show that the movant is not entitled to relief; (2) hold a preliminary hearing because the motion, files, and case records show that a substantial issue exists. The court may deny the motion after the preliminary hearing if there is no substantial issue; or (3) hold an evidentiary hearing because the preliminary hearing, motion, files, and case records show that there is a substantial issue justifying the hearing. *Beauclair v. State*, 308 Kan. 284, 291, 419 P.3d 1180 (2018).

Here, the district court denied Breitenbach's motion after a preliminary hearing. Appellate courts have unlimited review over a K.S.A. 60-1507 motion dismissed without an evidentiary hearing. K.S.A. 2023 Supp. 60-1507(b); *Beauclair*, 308 Kan. at 293. On

appeal, this court determines whether "the motion, files, and records of the case conclusively show that the movant is entitled to no relief." 308 Kan. at 293. We begin by reviewing the principles governing ineffective-assistance-of-counsel claims.

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees criminal defendants a right to effective assistance of counsel. See U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The test for ineffective assistance of counsel has two prongs. 466 U.S. at 687; *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland* in Kansas). The movant—here, Breitenbach—must establish that their counsel's performance was deficient and that it prejudiced them. 236 Kan. at 654.

An attorney's performance is deficient if it falls below an objective standard of reasonableness. 236 Kan. at 654. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, an attorney's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Prejudice is proven when there is a reasonable probability that but for counsel's serious errors, the result of their criminal proceeding would have been different. *State v. Cheatham*, 296 Kan. 417, 431, 292 P.3d 318 (2013). And "'[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" 296 Kan. at 432 (quoting *Strickland*, 466 U.S. at 694). Without confidence in the outcome, a defendant is deprived of their right to a fair trial. *Cheatham*, 296 Kan. at 432.

Breitenbach claims that Smartt was ineffective in two ways—for failing to obtain the results of a fingerprint test and for failing to test and independently retest certain DNA evidence. Because of these alleged errors, Breitenbach asks this court to reverse his convictions and remand his case for a new trial. Neither argument is persuasive.

Breitenbach argues that Smartt—his appointed attorney, whom he discharged approximately seven months before trial—was deficient for failing to obtain test results of fingerprints that were lifted from the sliding glass door leading to the balcony of the apartment where the crime was committed. He asserts that the fingerprint test was highly relevant because a crime scene investigator testified that the perpetrator used the sliding glass door to exit the apartment, meaning competent counsel should have obtained the test results. This argument was not included in Breitenbach's K.S.A. 60-1507 motion, nor was it argued before the district court at the nonevidentiary hearing on his motion.

As a general rule, issues not argued before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Still, this court may choose to hear a new argument under several exceptions: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; or (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). In addition to our conclusion that the record does not support any of the exceptions, Breitenbach does not argue that any of these exceptions apply, thereby waiving and abandoning the argument. See Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36); *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (issue is waived and abandoned when movant fails to explain why it was not raised below but should be considered for the first time on appeal).

7

Apart from his argument about the fingerprint testing, Breitenbach asserts that Smartt was ineffective for failing to test "other DNA samples from the crime scene," including potential semen samples from a couch, and failing to independently retest DNA evidence already processed by State. This claim also lacks merit. Both this court and the Kansas Supreme Court have rejected similar challenges to an attorney's decision not to request DNA testing as part of a reasonable defense strategy. *Moncla v. State*, 285 Kan. 826, 837-38, 176 P.3d 954 (2008); *Sanders v. State*, 26 Kan. App. 2d 826, 829, 995 P.2d 397 (1999).

As we have noted, Breitenbach represented himself for about seven months leading up to the trial and throughout the trial. As a result, Smartt's alleged failures in the district court before then are too attenuated from the trial to have compromised the jury verdicts. Breitenbach cannot demonstrate prejudice from Smartt's performance, which is enough to deny relief on the 60-1507 motion. See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012). Breitenbach has not alleged his lawyer affirmatively acted in some way that irrevocably tainted the direct criminal case generally or the guilty verdicts specifically. Breitenbach asserts that Smartt should have obtained these DNA tests because defense counsel has a duty to reasonably investigate a client's defenses or make a reasonable decision that such investigation is unnecessary. *State v. Butler*, 307 Kan. 831, 856, 416 P.3d 116 (2018). But again, Breitenbach ignores that he acted as his own attorney at trial and for the immediately preceding seven months.

Finally, Breitenbach cannot prove that failure to obtain additional DNA tests and retests was prejudicial considering the overwhelming evidence against him. Breitenbach argues that testing potential semen samples on a couch would reveal that someone else was present. Even so, it is unclear how this would have changed the outcome of his trial since his DNA was found inside the victim, indicated by an anal swab.

8

As our Supreme Court noted in Breitenbach's direct appeal, "evidence of bodily fluids from other contributors found on a victim or at the scene does nothing to negate the fact that a particular individual's DNA is found *inside* that victim, as was Breitenbach's." 313 Kan. at 87. As noted above, he also ignores the strong non-DNA evidence against him, including evidence of the victim's blood on his shoe, statements to his family that he hurt the child, the child's identification of Breitenbach in a photo lineup, and that he was near the crime scene.

Breitenbach does not explain why retesting the DNA would have yielded different results other than his hope that a retest would exclude him as a contributor. Breitenbach presents no reason to doubt the veracity of the initial test, which was fully explored on direct appeal.

Breitenbach fails to show any basis for finding that his counsel's performance was prejudicial or led to his convictions. The district court properly dismissed Breitenbach's ineffective assistance of counsel claim.

We turn now to Breitenbach's claim of judicial bias. This court uses a two-part test when considering a judicial bias argument in a criminal case: (1) The defendant must show that the trial judge has a duty to recuse; and (2) the defendant must show actual bias or prejudice that warrants setting aside the conviction or sentence. *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012).

Breitenbach argues that the trial judge, Judge John J. Kisner, Jr., engaged in judicial bias because he gave the State "unfettered access to DNA testing," while denying Breitenbach's requests for DNA testing, and did not allow testimony from a defense expert to question the validity of the State's evidence at trial.

9

Judge Kisner's rulings concerning DNA were potential trial errors for review in Breitenbach's direct appeal and are not properly challenged in a K.S.A. 60-1507 motion. Supreme Court Rule 183(c)(3) (2024 Kan. S. Ct. R. at 240) ("A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal."). The district court's pretrial rulings denying additional DNA testing were at most decisional errors and were challenged by Breitenbach in his direct appeal. Breitenbach's attempt to repackage his DNA arguments under the guise of judicial bias fails.

The district court did not err in dismissing Breitenbach's K.S.A. 60-1507 motion.

Affirmed.